Circuit is now in session. Please be seated. Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. My colleagues, Judges Bumate and Pius, welcome you. Just a few housekeeping matters before we start. Basically, I call the submitted matters first just to get them out of our way. Otherwise, you're already seated at council tables, so we'll call in the order. And by your case designation, you have a time. And whatever the time is, I think both people today have 15 minutes each side. If you are the appellant, 15 minutes includes – that's your total time. So any time you wish to reserve for rebuttal has to be within that 15 minutes. So expect to be – keep track of your own time and expect to be held to that. With that exception, if you tell me aspirationally how much time you'd like to save for rebuttal when you come to the podium, I am looking at the clock. It counts down, then it goes up. I'll try to give you a little reminder when you might be getting into that time. But understandably, I know that everyone came here to say something, and I hope you get to say what you came here to say. But we also have questions. We have to decide your cases. And so if one of my colleagues or I are asking you a question, and you can see that your time's run out, you don't need to ask permission to continue to answer the question. Please answer any questions that we have. And while if we are unusually active in our questioning and take up a lot of your time, I do have the limited authority, as it were, that I can adjust the time a bit if I feel like we want to hear more. So we'll call the matters on calendar. Francisco Alvarado Romero v. Todd Blanche, 25-1827. That matter's been submitted on the briefs, will be submitted as of this date. Maria Tercero Bautista v. Todd Blanche, 25-3269, has been submitted on the briefs, and will be submitted as of this date. And then also Paul Feller and Cronus Equity v. Doe's and Robert Petty, 24-5198, 24-5199. Those matters have also been submitted on the briefs and will be submitted as of this date. And on the first matter that's here for argument, 25-1306, J. Netavidad Flores Jimenez v. Todd Blanche. Each side has 15 minutes, and I'm advised that originally you were going to split time, but you've decided that one person, I think it's Lya Ferreira, is going to take all of the time, including rebuttal. All right. We're ready to proceed. Good morning. Good morning, Your Honors. May it please the Court. Lya Ferreira appearing as pro bono counsel on behalf of Jose Netavidad Flores Jimenez. I would like to reserve three minutes of my time for rebuttal. Netavidad is seeking remand of the agency's particular serious crime determination and denial of protection under the Convention Against Torture. To begin, the immigration judge did not apply the correct legal standard in her PSC analysis under Gomez v. Sanchez. She failed to consider all reliable evidence of Netavidad's intellectual disability and moderate major depressive disorder when assessing the underlying circumstances going to his dangerousness. Here the immigration judge found that the facts and circumstances underlying Netavidad's attempted robbery conviction supported a PSC finding. However, nowhere in this PSC analysis did the agency consider how Netavidad's intellectual disability contributed to his dangerousness. So what was the ALJ doing when discussing his mental conditions? Yes, Your Honor. I mean, she did. She did, Your Honor. She limited her analysis as to whether or not Netavidad was experiencing auditory and visual hallucinations at the time of the crime. So she did focus mostly on his psychosis. Did she say she was limiting her analysis to just those? She did, Your Honor. Or was that just an example? In her analysis, she makes it clear that because he was not experiencing perceptual disturbances, which is how she described them, that that in itself did not go to his dangerousness because he could not show that he had had a hallucination that had instructed him. But there's all sorts of evidence in the record. Just because you don't mention every single piece when you're deciding something doesn't mean that you didn't consider it. Yes, Your Honor. But here under Gomez v. Sanchez, it's clear that she did have to take into consideration all reliable evidence of mental health symptoms that he was experiencing that day. And her analysis is completely devoid of any mention of his intellectual disability symptoms or those of his major moderate depressive disorder. So didn't we say in – and you can correct me if I'm wrong because we have a lot of reading to do these days – but in Edgar G.C., didn't we say that the IJ does not have to run through each diagnosed condition and analyze each one with respect to whether or not that particular condition contributed? Correct. If there's no reliable evidence that they were present that day. Here, it's very clear from the record, Her Natividad's own testimony, that the day of the commission of the crime, he was experiencing symptoms of his intellectual disability as well as his major moderate depressive disorder. His own testimony makes clear that he was experiencing loss of sleep, loss of appetite. Well, just because you have mental issues, that's not the end of the inquiry. There has to be some connection to the behavior. And it seems that you're trying to express doubt in your briefs about whether Petitioner actually waved a box cutter during the robbery, but I'm just not sure how we can reweigh the evidence when there's factual findings on all of this. It's all there. It's not like it's not all there. Yes, Your Honor. Well, as to whether or not the actions would be attributed to Her Natividad's mental health, that was actually analysis never done by the immigration judge. So here we believe that remand is actually appropriate to the agency. I think that's going a little far. It may not have been done the way that you wanted, but you're looking at three judges, and you're looking at people that I've probably been a judge longer than you have been alive, I'm thinking at this point. So just because we don't say everything the way that you want to say it doesn't mean that we didn't consider it. Yes, Your Honor, but here she didn't talk about his intellectual disability disorder symptoms or his major depressive disorder symptoms at all. And because she didn't even take those into consideration or even factor those at any point during her PSC analysis specifically, we do believe that it should be remanded to the agency to at least do that in the first instance. So it sounds like you're requiring a checkbox requirement, that she has to go through every single ailment and say whether or not it impacted the offense. Is that what you're saying? Not a checkbox, Your Honor, but simply when there's reliable, relevant evidence that the symptoms were present that day. And again, as I said, the record evidence from expert testimony. So the IJ does say on page 20 that the court also considers respondents' mental health and the impact that his mental health struggles may have had on his commission of the offense. Yes, but she does not actually look into any of the symptoms that he was exhibiting that day and how they could be attributed to his dangers. Did he testify? He did, Your Honor. Did he say he was hearing voices that day? He did. He also said that he was not eating well, not sleeping well, and was not in the right state or place of time at the time of the commission of the offense. Where in the record does it say he was hearing voices that day? That's at 1136, Your Honor, where he gave testimony as to the conviction that day, as to that specific crime. What voice did he hear that day? There's not specific information on the record at this time. And to the extent, by the way, that if this was cut off or not directly attributed to his symptoms, that is because the immigration judge herself actually precluded further argument on this during her closing when his immigration attorney attempted to discuss the PSC and how it was attributed to his mental health diagnoses. The IJ actually cut off the immigration attorney and told her that she would not be fined. So you're not alleging a due process violation, are you? No, Your Honor. I'm just saying that as to the extent that it is not directly attributed, his mental health diagnoses to his dangerousness that day, part of the reason that the record is not tying those two together at this time is because the immigration attorney was precluded from doing so. What did he say about his condition? The petitioner himself? At the time of the incident, yes. He said that he was not sleeping well, that he was hearing voices, that he was experiencing all of the symptoms. But at the time of the incident? He said that he was experiencing that day in terms, again, whether or not— No, I'm talking about when the incident occurred, when the attempted robbery occurred. So there's not an inquiry in the record as to whether at the time when it occurred. He does talk about that day, what he was feeling when these things were happening. What time did this occur? The incident occurred, I believe, in the afternoon, Your Honor. I don't have the exact AR site to that, but he does talk about, again— And before that, he and his friends were drinking, right? They were, Your Honor. I would say, though, that— When was it during the day that he heard the voices? That is not specific in his testimony, and that was not inquired by the immigration judge about whether or not he was experiencing— Not in this specific instance, Your Honor. I will say— Let me ask you—I have one other just sort of—maybe it's a legal question. I don't know. Do we review the PSC determination by the IJ for abuse of discretion, or is it de novo? Here, Your Honor, the standard of review would be de novo because legal error precedes a review of abuse of discretion, and here the IJ's error was a legal one in which he did not account for all symptoms of the petitioner's mental health. And the case you rely on for that proposition? That would be Perez-Palfax v. Holder, Your Honor. And what do we do with Edgar G. C. v. Bondi? Again, I believe that— Just ignore it? No, Your Honor. Again, I think Edgar G. C. v. Bondi at that point made it very clear, actually, that you cannot only limit someone's mental health symptoms going to dangerousness only to visual and perceptual hallucinations. I believe this is actually contrary to G. C. v. Bondi, which reaffirmed Gomez v. Sanchez's holding that all reliable, relevant record evidence should be taken into account. So what is your best case saying that the agency must expressly consider every mental health diagnosis, regardless of whether the petitioner attributes his offense to that diagnosis? What's your best case? My best case would be Abdel Salam v. Garland, Your Honor. In that case, it was actually remanded back to the board, where it made clear that the petitioner that day was unmedicated, was not acting right, and similarly to petitioner here, had a loss of sleep. There, the court found that the board did have to take into account the fact that this individual was experiencing those symptoms the day of the crime in order to see if they could be attributed to dangerousness. And again, Your Honor, we're not saying that all mental health needs to be taken into account, only that which was present the day of the crime and where the record shows reliable evidence that that was occurring. So counsel, the IJ says on the bottom of page 20, the respondent did not claim that his other mental health symptoms influenced his actions during this incident. Your Honor, again, his testimony makes clear that he was experiencing symptoms that day. Well then, you're just asking us to, I mean, are you saying that that was a clear error on the IJ's part? I mean, that just seems like a factual determination that we can't really review. Not a factual determination, Your Honor, but I do think here that there is record evidence that does contradict this to the extent that the immigration judge, again, under Gomez-Sanchez, should have taken into account. Well, but you, would you concede that we can't re-weigh the evidence at this point? Yes, Your Honor. So if we were to conclude, hypothetically, that this, that you're asking us to re-weigh the evidence as what Judge Bumate has said, that you lose on that. Well, Your Honor, I'm not asking for a re-weighing of evidence. Well, no, I asked you hypothetically. If we were to determine that you're asking us to re-weigh the evidence, we cannot do that. Is that correct? Correct, Your Honor. Okay. And again, I would like to make clear here that we are not asking this court to come to the determination of whether or not it could be attributed to his mental health diagnoses, but only that it be returned back to the agency in order to do that analysis in the first instance. What would the argument be in IJ that it, because he's not dangerous because of his mental illness? What's the argument? Before the immigration judge, Your Honor? Yeah, what would you say? Well, I would say that because he was experiencing acute symptoms of his major depressive disorder, which expert testimony found impacted his criminal behavior, as well as wasn't receiving any care. But how does that make you less dangerous? For his intellectual disability. Just saying that now that he, that this influenced his actions at the time, and that now that if he would be receiving care in the United States, that that would be mitigated and that he wouldn't have made those actions. But you know that mental health is already sort of a double-edged sword. On the one hand, it can be used to mitigate behavior. But on the other hand, it can actually make you more dangerous. If, for example, you know, if you are hearing voices and the voices are telling you to kill someone, how does that make you less dangerous? Yes, Your Honor. And here, again, our argument would be the fact that at the time he was undiagnosed and unmedicated. But there is also, again, record inconsistencies as to whether or not he actually brandished the box cutter, which is something that we also believe that the immigration judge should have reviewed. Well, but the IJ found that he did, and there were witnesses that testified to that effect. So I'm just going to, you know, I'm going to zip in there and say, hey, why are you not asking us to re-weigh the evidence? There are people that were there and said he brandished it, and the IJ found those people credible. So how are we not re-weighing the evidence on whether he brandished it or not? Not re-weighing the evidence, Your Honor, but here simply looking at contradicting expert testimony. Are we looking at why he brandished but not whether he brandished? Would you concede that? That would be an analysis, again, that we would take back to the immigration judge and just ask that she look at the record and look at the witness inconsistencies in the testimony. But you do say in your briefs you express doubt of whether he waived a box cutter, but it seems to me that you have factual findings flat out against you on that. We also have factual findings in the record where testimony says that he actually had held up the box cutter to the side of his own head, and there was witness testimony disputing whether or not he had actually threatened anyone with the box cutter and whether it had actually been brandished. Okay. The witness said threatened anyone else. Yes, with the box cutter. But the witness felt threatened, correct? I believe so from that report. That's a major fact. Yes, Your Honor. Do you want to save the balance of your time? We may have to agree to disagree on some of these things. Okay, thank you. Thank you, Your Honor. Good morning. Good morning, Your Honors. May it please the Court, Nancy Pham on behalf of the Attorney General. Your Honors, the Court should deny this petition for review. The two issues before this Court are the particularly serious crime determination and the denial of cat deferral. So you heard, I guess, we've kind of already developed the line of argument here, so I'm not meaning to cut you off here. But during the November 13, 2023 hearing, Petitioner's Counsel began to discuss why the IJ should not find a PSC, and the IJ cut off Counsel and stated, I'm not finding a PSC in this case. Is that an issue that the IJ did not listen to the Petitioner's full argument? Your Honor, to that point, specifically here, the IJ was focused on the mental health conditions that were raised by the Petitioner. The Petitioner had full ability to testify, so our position is that that is not an issue, and also due process is not before this Court. So for that reason also, that matter is not before the Court. And the government would just like to point out, as far as the PSC determination, under 8 U.S.C. 1252 A2C, this Court lacks jurisdiction to review any final order of removal issued against an alien who is removable by reason of having committed, in this case, an aggravated felony and a crime of domestic violence. So under that provision, basically the case law that has been developed is that the application of law to undisputed established facts is what is reviewable. And here we don't have undisputed or established facts, so the position that we take is that we don't even get to this discussion of facts here, and we don't even get to this, you know, is there, there's no question of law essentially because we don't have those established facts. So I think Judge Paez asked your friend on the other side, the finding on the PSC, do we, what's the standard of review on that from your perspective? She said de novo, and Judge Paez asked her, is it de novo or abuse of discretion? What's your answer? Your Honor, it's only de novo if there's a legal error here, and under the agency's rationale and decision, there's no suggestion or no even inclination that the immigration judge didn't properly apply the frontescue and bar factors. So if there had been legal error, then that would be reviewed de novo. So if your position is if the IJ had not reviewed the frontescue factors, that would be legal error, and then we're talking de novo. Yes, Your Honor. All right. I'm sorry. Go ahead. I was just going to say, didn't the IJ make findings here? Yes, Your Honor. So you just said a minute ago that the facts are contested. Maybe I was not clear enough, Your Honor. You said, yeah, that kind of cuts against you in the sense that we just gave your friend on the other side. I don't want to say a hard time, but we push back on saying, aren't you asking us to reweigh the evidence? And if we're reweighing the evidence, that puts us in a realm that we don't do here. Right. So is she asking us to reweigh the evidence, or you're saying there aren't factual findings, or Judge Paez is saying? Yes, Your Honor. So the IJ did make factual findings, and the point I was maybe inarticulately making is that in terms of things like the box cutter and the brandishing, that is asking for a reweighing of evidence. And we can't do that. Correct, Your Honor. All right. Yes, Your Honor. But you start with the idea that there was a factual finding that he was brandishing it. Yes, Your Honor. That IJ found that he brandished the weapon, that the witnesses in the store were put in fear, and specifically just to address because, Your Honor. So are we reviewing the PSC for abuse of discretion then? Yes, Your Honor. Oh, wait a minute. Wait a minute. Wait a minute. You just confused me. So our position is that there is no legal error, and so that would have been reviewed de novo, and then applying the frontescue and bar factors, that would be reviewed with the abuse of discretion. I thought it was we looked to see whether or not the IJ applied the correct law. Right? For de novo review, yes, Your Honor. Well, whatever we're doing, we have to look to see if the IJ applied the correct law because if the IJ didn't apply the correct law, then it would be error and likely would have to go back for the IJ to apply the correct law. Yes, Your Honor. Nobody here argues that I thought that the IJ did not apply the correct law. I mean, the IJ cites all the cases, correct? Your Honor, our position is that the IJ did apply the correct law, the frontescue factors and bare V-bar. Yes, Your Honor. Right. So where does the abuse of discretion come in now? In just reviewing whether the undisputed facts applied to that correct law arise to the PSE determination. Oh, I see. I see. So let me see if I've got this right and you can give me your response. But they argue there has been an error of law. Let's just start with that. It's an argument. Okay. So we have to look to see, look at the record, look at the IJ's decision to see if the IJ applied the correct cases, right? Yes, Your Honor. And that's kind of de novo because we get to look at that, right? Yes, Your Honor. We look at it and we say, ah, looks like the IJ has cited all the relevant cases, discussed them, drew out the relevant principles, applied those principles here. It looks like the IJ applied the correct law. So your argument is at that point it then becomes an abuse of discretion when regarding the IJ's determination that there was no, that there was a particular serious crime here. Is that correct? Yes, Your Honor. That's my understanding. Taking the factual findings that the IJ made and sort of applying them to the standard here, the Frantescu and Baer v. Baer factors. Yes, Your Honor. But I thought at that point that unless our determination was for legal error because that's all our, you know, on jurisdictional stripping statutes, we have to look for, we can only review for legal error. So at that point we have to ask whether all of this adds up to a particularly serious crime, which is, you know, a question of law. We don't have jurisdiction. I'm not sure I followed that last part. I'm not sure. You kind of confused me a little bit. That's all. Well, you sort of implied when you, well, I heard, I thought you were saying we don't have jurisdiction to review the PSC. I heard that in your argument in the beginning. It seemed that's where you were going. Do we have jurisdiction to consider the PSC? Your Honor, you have jurisdiction to consider constitutional claims and questions of law. But you may not review, like, the factual findings of the IJ. Right. We have to take the IJ's factual findings as they are, right? Yes, Your Honor. We can't question them. Yes. And to the extent that petitioner is raising framing, like, the factual dispute as a legal error that the IJ missed or didn't consider facts, our position on that is Edward G.C. clearly states that the agency doesn't have to review every single mental health condition but just what is raised by the alien. I'm not sure how much progress we're making on this point. Why don't you jump to, I think, what I heard as what your friend on the other side was talking about in terms of that she arguably was putting forth a standard that the IJ had to consider every mental health condition and that what the IJ did was disregarded a lot of the mental health to come to the conclusion. What's your position on that? Your Honor, our position is that under Edward G.C., it is only when the petitioner presents evidence directly attributing the crime to his mental illness. And that's at 843 is the pin site there. Well, maybe you can help us from your perspective. What did the record show about what he testified about what was his mental state at the time of the box cutter incident? Yes, Your Honor. Because there was, whether it was a hearing voice, did he say it was hearing voices or what was happening there? Yes, Your Honor. The specific quote from his testimony is that as he was grabbing another case of beer, he felt really paranoid. And that's at AR 1135. And as far as to the voices, Your Honor, he was speaking about his mental health the day of the offense. And he claimed that he was not, quote, was not eating well. I was not sleeping well. I was still at the time hearing voices. And so I think that is what petitioner's counsel is hanging their hat on. But still at that time taking into that context just means that during this time period he was hearing voices. And that's why the IJ, you know, looked to at the time of the actual incident when he was stealing the beer and vanishing the box cutter in the store, was he hearing voices then that, you know, led him or guided him to do anything? And the record is silent on that. He did not testify that he was hearing voices at the time of the incident. He said he heard voices as part of his mental diagnosis, but not on that specific incident. Is that what you're saying? He didn't say that specifically. Yes, Your Honor. His quote taken in the context was at the general time period. He was still hearing voices. But during the offense specifically he only said that he felt paranoid. What is your best case on how much detail an IJ has to give about considering evidence? Your Honor, we would cite to Edward GC. Any other questions? Would you want to address just for a minute the Catt claim? Of course. Yes, Your Honor. Specifically to Catt here, the court has jurisdiction under Nasrallah. And under the substantial evidence review, this record does not, just does not compel a contrary conclusion to what the agency found. Specifically, if we just take. So if he has a PSC, he only is eligible for Catt, right? Deferral of Catt. Yes, Your Honor. Okay. If you take just in terms of the aggregate analysis of the likelihood of torture, if you just take one aspect here, observable symptoms, the IJ found that specifically his mental health would not deteriorate to such extent that it would draw unwanted attention from various actors. AR-355. Well, it appears the IJ did note that she had considered in aggregate petitioner's multiple theories about why petitioner might be tortured. But the IJ did not seem to provide much corresponding analysis. Was her analysis enough? And if so, why? Yes, Your Honor. So at AR-360 is what you're referring to, I believe, which is when she does the aggregate analysis, explicitly stating that she does that. But what she did was incorporate by reference the withholding of removal section. And that was AR-338 to 353, where she in detail goes over mental health conditions. She cites exhibit after exhibit, you know, both problems with the mental health facilities in Mexico, but also the government taking steps to improve them, passing laws that, you know, aim to improve the conditions of mental health facilities and so forth. And so our position is that she incorporated specifically that very detailed finding. And then at the end indicated and told us that she considered all of that in the aggregate by saying so in AR-360. Okay. There are no further questions. Okay. Thank you, Your Honor. Thank you. All right. We're ready for rebuttal. Your Honors, here we believe that you do have jurisdiction over the PSC arguments as what was committed here was legal error by the immigration judge. Additionally, as it comes to the CAC claim, here the immigration judge erred where her final conclusions and her likelihood analysis were not supported by the record. And in addition, there are also indications that she did not consider all relevant evidence, which would also be legal error. As to whether or not she could fold in her nexus, excuse me, Your Honors, her withholding of removal findings, there the withholding of removal findings required a nexus finding. And therefore, by folding them into her likelihood analysis under CAT, she committed another legal error. Specifically — You're saying there's a bright-line rule you can't incorporate findings from withholding in a CAT claim? No, Your Honor. But here specifically, she completely — you can fold in factual findings into the CAT claim, but here she folded in his likelihood of torture by folding in the withholding of removal claim where she had a focus on nexus. If you look, she created a causal chain of four steps that was predicated partly on her nexus analysis and the withholding of removal. Well, that doesn't change your factual findings. It just changes how you use them. If one requires nexus and the other doesn't require nexus. So in reviewing the CAT deferral, must your interpretation compel another finding? Yes, Your Honor. All right. So any factual analyses can cover the whole thing, right? Yes, but her factual analyses here were not supported by the record in her likelihood finding as well. So the facts that she used to support her likelihood analysis, most namely in evidence, for example — So there would have to be clear error there, right? Your Honor, I do believe that the review here would be legal error, but it wouldn't survive a review under substantial evidence either because there's directly contradicting facts in the record that contradict her conclusions. As an example, I can give, Your Honor, here she found that he was not more likely than not to be harmed in psychiatric institutions. Okay, so you've gone into overtime, so take 30 seconds and wrap up. Yes, Your Honor. Here, again, in her likelihood analysis, we'll rely on our briefing, but there were several pieces of record evidence that she completely disregarded and that were contrary to her conclusions in her CAT finding. Thank you. Thank you for your argument. So on behalf of my colleagues, we always want to thank — we appreciate everyone that comes here and argues in front of us, but we do always like to acknowledge that when people take cases pro bono as part of our pro bono program, we are particularly grateful because it makes for a more meaningful argument for us and helps our decision-making process. So we thank you for taking the case pro bono and the arguments that were made here today. All right, well, this matter stands submitted.
judges: PAEZ, CALLAHAN, BUMATAY